IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>AND STATE OF ILLINOIS *ex rel.* )<br>CHERRY GRANT, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>THOREK HOSPITAL AND )<br>MEDICAL CENTER AND )<br>SPECIALCARE HOSPITAL )<br>MANAGEMENT CORPORATION )<br>)<br>Defendants. ) | No. 04 C 8034<br>Wayne R. Andersen<br>District Judge |

## **INTRODUCTION**

This matter is before the court on motions to dismiss by defendants Thorek Hospital and Medical Center ("Thorek Hospital") and SpecialCare Hospital Management Corporation ("SpecialCare") for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6). For the following reasons, the motions to dismiss plaintiff's complaint are granted.

## **BACKGROUND**

Plaintiff-relator Cherry Grant brought this *qui tam* action against defendants Thorek Hospital and SpecialCare under the False Claims Act ("FCA") and Illinois Whistleblower Reward Protection Act ("IWRPA"), claiming that defendants engaged in various acts designed to defraud both the United States Government and State of Illinois by securing false federal and state reimbursements for hospitalization and other services. Grant claims to have witnessed this fraudulent activity while she was employed by Thorek Hospital as a charge nurse. During the course of Grant's

employment, Thorek Hospital contracted with SpecialCare, a private corporation, to provide drug treatment, therapy, and "detox" services for patients who meet certain requirements.

Grant claims that Thorek Hospital and SpecialCare intentionally admitted patients in the program that did not meet admittance requirements. She also claims that doctors falsely reported that they had treated patients whom they actually did not treat. Finally, Grant claims that Thorek Hospital and SpecialCare falsified forms and encouraged drug users to "raise their scores" by taking additional drugs. This alleged conduct resulted in fraudulent reimbursements, funding, and expenditures by Medicare and Medicaid to Thorek Hospital and SpecialCare.

When Grant became aware of what she perceived as fraudulent activities, she refused to assist doctors when asked to participate. For example, in October 2002, Grant alleges that a doctor at Thorek Hospital asked an employee to falsify medical information. Grant claims to have told the doctor that the employee would not comply. In December 2002, Grant refused to "fudge documents" when instructed to do so by another doctor. The doctor responded to her refusal by saying, "then nobody will have jobs."

On December 29, 2002, Grant was fired from Thorek Hospital "without explanation." Subsequently, she brought this five count suit against defendants Thorek Hospital and SpecialCare. Count I alleges violations of the FCA against Thorek Hospital and SpecialCare. Count II alleges violations of the IWRPA against Thorek Hospital and SpecialCare. Count III alleges unlawful retaliation under the FCA against Thorek Hospital. Count IV alleges unlawful retaliation under the IWRPA against Thorek

Hospital, and count V alleges retaliatory discharge in violation of Illinois law against Thorek Hospital. Defendants have filed motions to dismiss all five counts.

## DISCUSSION

When resolving a motion to dismiss, we view the allegations of the complaint to be true, and consider all well-pleaded facts and any reasonable inferences from the facts in the light most favorable to the plaintiff. *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir. 1994). Dismissal is proper only if it is clear from the complaint that no set of facts consistent with its allegations would entitle the plaintiff to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).

Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances of fraud or mistake shall be stated with particularity." FED.R.CIV.P. 9(b). Rule 9(b) was developed to promote three major purposes: (1) protecting a defendant's reputation; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) placing the defendant on notice of the claim. *United States and Illinois ex. rel. Bantsolas v. Superior Air and Ground Ambulance Transport, Inc.*, No. 01 C 6168, 2004 WL 609793, at *2 (N.D. Ill., Mar. 22, 2004), *quoting Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994). Generally speaking, this standard of particularity requires that a plaintiff specify the "who, what, when, where, and how" of the alleged fraud. *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). Simple conclusory allegations of fraud do not satisfy the Rule 9(b) standard.

3

*United States ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604-05 (7th Cir. 2005).

A.     *False Claims Act and Illinois Whistleblower Reward and Protection Act.*

The FCA imposes liability on any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States . . . a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, as false record or statement to get a false or fraudulent claim paid or approved by the Government; [or] (3) conspires to defraud the government by getting a false or fraudulent claim allowed or paid.

31 U.S.C. § 3729(a). Thus, to state a claim under the FCA, a plaintiff/relator must allege that: (1) the defendant made a false statement; (2) the defendant knew the statement was false; and (3) the defendant made the false statement with the purpose of obtaining money from the Government. *U.S. ex rel. Crews v. NCS Healthcare of Ill.*, 460 F.3d 853, 856 (7th Cir. 2006).

Similarly, the IWRPA allows private persons to bring suits for false claims against the State of Illinois. 740 ILCS § 175/4. Actions may be brought against:

> [a]ny person who (1) knowingly presents, or causes to be presented, to an officer or employee of the State or a member of the Guard a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State; [or] (3) conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

740 ILCS § 175/3.

In count I, Grant alleges violation of the FCA by defendants Thorek Hospital and SpecialCare. In count II, Grant alleges violation of the IWRPA by defendants Thorek

Hospital and SpecialCare. Because the elements of a FCA claim and an IWRPA claim are so similar, the court will evaluate them together for purposes of this motion.

Both the FCA and the IWRPA are anti-fraud statutes; therefore, actions under both statutes must meet the heightened standard of pleading required by Rule 9(b). *United States ex rel. Robinson v. Northrop Corp.*, No. 89 C 6111, 1993 U.S. Dist. LEXIS 111, at *8 (N.D. Ill., Jan. 8, 1993). While it is true that Rule 9(b)'s particularity requirements may be relaxed when specific details are solely within a defendant's knowledge, a relaxed pleading standard for a *qui tam* relator cannot be reconciled with the fact that a relator is a plaintiff who steps into the shoes of the government. *Id.* In other words, a *qui tam* relator cannot hide behind the claim that she doesn't possess records of the fraud after she has had the opportunity to submit her case to the government. The *qui tam* relator must meet the normal standard of particularity required by Rule 9(b). In this case, by Grant's own admission, she submitted material evidence and information related to the complaint. She claims to have observed various fraudulent submissions to the government over the course of a two year period. As a result, Grant should have alleged in her complaint at least some representative examples of her observations of fraud.

Grant claims that Defendants Thorek Hospital and SpecialCare made false or fraudulent claims that can be summarized as admitting patients that were not qualified, falsifying charts and lab reports to attain additional government funds, and instructing patients to "raise their scores" on drug tests so that they could be admitted into the program. Her complaint relies upon various allegations such as "[a]dmitting patients that were not qualified for the program and did not meet the criteria for admittance" and

"[d]efendants would re-run lab results and falsify the original results." However, the complaint does not give specifics, such as the names of employees of Thorek Hospital and SpecialCare who submitted improper claims to the government, specific patients who were improperly admitted, or the amount of money the government lost through false claims. While Grant does mention the names of three doctors in the complaint, none of the doctors are alleged to have directly submitted fraudulent claims. Based on Grant's allegations in the complaint, we find that she has failed to meet the Rule 9(b) standard of specificity.

In *Petersen v. Community General Hosp.*, No. 01 C 50356, 2003 WL 262515, at *3 (N.D. Ill. Feb. 7, 2003), the court held that a relator who brings a suit under these statutes must at the very least provide some representative examples of the alleged fraudulent activity. The court explained:

> [t]he whole point of relator's case is that defendants submitted [fraudulent] Medicare claims . . . . But which patients? And which claims? And which claims or other documents show defendants falsely certified their compliance with federal law? These questions are absolutely essential to relator's claim of fraud.

*Id.* at *2.

The First Circuit Court of Appeals provides additional insight into what courts should look for:

> details concerning the dates of the claims, the content of the forms or the bills submitted, their identification numbers, the amount of money charged to the government, the particular goods and services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices. . . .

*United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 232-33 (1st Cir. 2004). While this is not a list of requirements, the information indicated above

6

would help to determine whether a relator has stated his or her claim with particularity. *Id.*

In this case, Grant has alleged violations of the FCA and the IWRPA in a general manner without providing any details that would allow this court to allow her case to withstand these motions to dismiss. Instead, her allegations are completely conclusory. Accordingly, we grant, without prejudice, Thorek Hospital and SpecialCare's motions to dismiss counts I and II.

B. *Unlawful Retaliation under the FCA and IWRPA.*

In count III, Grant alleges unlawful retaliation against Thorek Hospital under the FCA. In count IV, Grant alleges unlawful retaliation against Thorek Hospital under the IWRPA. Once again, because claims brought under the FCA and IWRPA are so similar, we will evaluate them together for purposes of this motion.

To state a claim for retaliatory termination, a relator must prove three elements: (1) relator's actions were done to promote a FCA claim and were therefore protected by the statute; (2) the relator's employer was aware that relator was engaged in protected activity; and (3) relator's firing was motivated, at least in part, by the protected activity. *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir. 2004), *citing Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002).

The Seventh Circuit has broadly interpreted what constitutes "protected activity" under the FCA. *Id.* at 479. An employee is not required to have knowledge of the FCA for the employee's actions to be protected. *Id.* The test to determine what constitutes protected activity involves both a subjective and objective component: whether (1) the

7

employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government. *Id.* at 479-80, *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002).

Grant has not adequately alleged that she engaged in activity protected by the FCA. Grant does allege that she refused to comply with a doctor at Thorek Hospital who told her to "fudge documents." Grant further alleges that she refused to comply with another doctor who wanted her to instruct an employee to falsify medical information. However, a general refusal to comply with fraudulent conduct does not constitute protected activity. Grant argues that a general refusal to engage in illegal conduct is protected. While in *Fanslow*, the Seventh Circuit reversed the district court's dismissal of a relator's claim because the district court did not consider whether a refusal to participate in illegal conduct should constitute protected activity, *id.* at 482, in that case the relator not only refused to comply with illegal activity, but also initiated contact with a federal official and submitted internal complaints – significantly more conduct than Grant.

The Seventh Circuit has also broadly interpreted the requirement that an employer be put on notice of a *qui tam* action. *Id.* at 483. While a relator is not specifically required to mention the FCA, a relator must at least inform the employer that he or she is investigating illegal activity. *Id.* at 484. Grant did not inform Thorek Hospital that she was investigating illegal activity. Instead, Grant alleges only that she would not comply with doctors who asked her to engage in fraudulent acts. This did not sufficiently put Thorek Hospital on notice of a *qui tam* action.

Finally, an employee must allege that his or her discharge was motivated, at least in part, by some protected activity. *Id.* at 485. As mentioned above, Grant has not alleged facts sufficient to show that Thorek Hospital was put on notice of a *qui tam* action; therefore, there is no indication that Thorek Hospital was motivated by Grant's actions in terminating her employment. In fact, Grant does not even allege facts from which Thorek Hospital could have reasonably concluded that she engaged in protected activity.

Despite the Seventh Circuit's broad interpretation of *qui tam* retaliatory termination, Grant's complaint falls short of the minimum necessary to survive a motion to dismiss. Additionally, Grant has failed to allege that she was fired for engaging in protected activity under the IWRPA. Therefore, Thorek Hospital's motion to dismiss counts III and IV is granted, without prejudice.

C. *Unlawful Retaliation under the Illinois Whistleblower Reward Protection Act and Retaliatory Discharge.*

In count V, Grant alleges retaliatory discharge in violation of Illinois law. When claims giving rise to federal jurisdiction are dismissed, district courts may dismiss state claims as well. Accordingly, count V is dismissed without prejudice.

## **CONCLUSION**

For the aforementioned reasons, Thorek Hospital's motion to dismiss [42] and SpecialCare's motion to dismiss [58 ] are granted without prejudice.

Grant is given thirty-five days from the date of this order to file an amended complaint consistent with this opinion. If she fails to file an amended complaint, the case will be dismissed with prejudice and a final judgment will be entered.

It is so ordered.

_____
Wayne R. Andersen
District Judge

Dated: August 29, 2007